IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROUTE GUIDANCE SYSTEMS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-221 (MN) |
| | ) | |
| INRIX, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ROUTE GUIDANCE SYSTEMS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-222 (MN) |
| | ) | |
| ONSTAR LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM ORDER**

At Wilmington this 4th day of January 2021:

As announced at the hearing on December 11, 2020, IT IS HEREBY ORDERED that:

1. INRIX, Inc.'s ("INRIX") Motion to Dismiss for Failure to State a Claim (D.I. 7 in C.A. No. 20-221) is DENIED; and

2. OnStar, LLC's ("OnStar") Motion to Dismiss (D.I. 9 in C.A. No. 20-222) is DENIED.

Defendants moved to dismiss the complaints in each of their actions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that the claims of U.S. Patent No. 6,917,876 ("the '876 Patent") are invalid as claiming ineligible subject matter under 35 U.S.C.

§ 101. Defendants' motions were fully briefed as of August 24, 2020,[1] and the Court received further submissions in both cases regarding which Supreme Court or Federal Circuit case each party contends is analogous to the claims at issue in Defendants' motions as related to the § 101 arguments. (*See* D.I. 17, 24 & 25 in C.A. No. 20-221). The Court carefully reviewed all submissions in connection with Defendants' motions, heard oral argument[2] and applied the following legal standard in reaching its decision:

**I.      LEGAL STANDARDS**

      A.      Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as

---

[1] (*See* D.I. 7, 8, 14, 15 & 17 in C.A. No. 20-221; *see also* D.I. 9, 10, 12, 13 & 14 in C.A. No. 20-222).

[2] (*See* D.I. 41 in C.A. 20-221; D.I. 30 in C.A. No. 20-222).

true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

        B.        <u>Patent-Eligible Subject Matter</u>

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. The Supreme Court has recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101: laws of nature, physical phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These exceptions "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 573 U.S. at 216. A claim to any one of these exceptions is directed to ineligible subject matter under § 101. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 573 U.S. at 217. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an

3

"inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

1. Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter).  In addressing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature.  *Alice*, 573 U.S. at 217; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).  "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'"  *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

2. Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more."  *Alice*, 573 U.S. at 218; *see also McRO*, 837 F.3d at 1312.  This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'"  *Berkheimer*, 881 F.3d at 1367 (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73.

"The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

## II.     THE COURT'S RULING

The ruling to deny Defendants' motions to dismiss[3] under Rule 12(b)(6) was announced from the bench at the conclusion of the hearing as follows:

> . . . [T]hank you for the arguments today. They were helpful. I am prepared to rule on the pending motions. I will not be issuing a written opinion, but I will issue an order stating my ruling. I want to emphasize that although I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state. There was briefing on the pending motions, there were additional submissions discussing what each party viewed as the most analogous case and there has been oral argument here today. All of the submissions and the arguments have been considered.
>
> As to the law, I am not going to read into the record my understanding of Section 101 law or the applicable pleading standards. I have a legal standard section that I have included in

---

[3]     (D.I. 7 in C.A. No. 20-221; D.I. 9 in C.A. No. 20-222).

earlier orders, including in *Innovative Global Systems, LLC v. Keep Truckin, Inc.*, No. 19-641. I incorporate that law and adopt it into my ruling today and I will also set it out in the order that I issue.

Now as to my ruling. There is one patent, U.S. Patent No. 6,917,876, which claims systems and methods that use a computer to supply a vehicle with route guidance data and presenting data to a driver where the communication to the vehicle happens in short bursts and the communication channel is closed after transmission (and reopened if necessary).

The patent has 49 claims.

Defendants have each moved to dismiss pursuant to Rule 12(b)(6), arguing that the asserted claims are directed to patent-ineligible subject matter. After reviewing the entire record, hearing argument, and applying the law as I understand it, I am going to deny the motions.

First, let me address the representative claim issue.

In the briefing, INRIX treats claim 26 as representative of the three independent claims and does a cursory analysis of the dependent claims. OnStar treats claim 1 as representative of the system claims and claim 26 as representative of the method claims. Today, in an effort to streamline their arguments, Defendants use claim 1 as the representative claim.

In its briefs, Plaintiff did not expressly challenge representativeness, but did imply without much support that the dependent claims further support patentability. Today during argument, however, Plaintiff agreed that there are similarities between claim 1 and claim 26 and focused on claim 1. Plaintiff also agreed that if claim 1 were to survive this motion, the other claims would as well.

In any event, I agree with Defendants as to the representativeness of claim 1. Although it is Defendants' burden to show invalidity for each claim, I do not understand Federal Circuit precedent to suggest that Plaintiff can imply that claims are not representative and fail to provide any "meaningful argument" for why the rest of the claims are not fairly represented by the claim or claims identified by Defendants.[4]

---

[4] *See, e.g.*, *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any

6

> [Claim 1 of the '876 Patent recites:
>
> 1. A route guidance system for guiding a driver of a vehicle to a desired destination on a road network, comprising:
>
>> a central computer adapted to calculate route guidance data providing a route for the vehicle to the desired destination;
>>
>> means for supplying the vehicle with the route guidance data calculated by the central computer, providing a channel of communication which is opened to transmit said route guidance data to the vehicle in a short burst and is then closed, so that transmission to the vehicle via said channel ceases, unless and until a need for further transmission via said channel to the vehicle arises;
>>
>> means for receiving the route guidance data calculated by the central computer; and
>>
>> means for presenting respective instructions to the vehicle as to the route to be taken to the desired destination.]
>
> Now moving to step 1 of the *Alice/Mayo* analysis. In the briefing, INRIX argued that the abstract idea is "communicating navigation data." OnStar argued that the abstract idea is "sending and receiving information (driving directions)" articulated slightly differently as "sending of driving directions to a vehicle driver." Today, in an effort to streamline their arguments, Defendants argued that the abstract idea claimed in the '876 Patent is sending, receiving, presenting driving instructions – and then added that the short burst referenced in the patent is itself an abstract idea.
>
> Regardless of the various articulations, the thrust of Defendants' argument is that the claims are directed to the mere transmission of information over a network, where that information is driving directions or navigation data. In Defendants' view, this is nothing more than making a human activity easier and more efficient by using computers in a conventional way. Indeed, today, Defendants used the example of a conventional operator providing directions over the phone to highlight the human activity that they believe is the focus of the claimed invention.

---

meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.").

7

Plaintiff argues that Defendants are viewing the claims at an improperly high level of abstraction, which the Federal Circuit has warned against. Plaintiff, however, does not offer much in the way of substance to support that position, simply claiming that "evidence establishes that many of the '876 Patent claim elements were unconventional at the time of invention" and that the invention "represented a new paradigm that improved the efficiency of navigation systems for vehicles."[5] According to Plaintiff, the claimed invention is directed to an improvement in the operation of computers and not the use of computers as tools – *i.e.*, the claims are to improvements in the efficiency and scalability of route guidance systems.

First, as to the "evidence" Plaintiff relies on, I am not considering Plaintiff's expert declaration in reaching my decision today. Although much of the language in the complaint is largely the same, if not verbatim, as that in the expert declaration, the expert declaration was not incorporated into the complaint and considering it would require converting Defendants' motions into motions for summary judgment,[6] which I decline to do.

Next, turning to the substance of Plaintiff's step 1 arguments, Plaintiff is attempting to fit the claims of the '876 Patent into the *Enfish* line of cases in which the Federal Circuit has held that certain improvements in the way computers or technology operate fall outside the realm of abstract ideas. In particular, Plaintiff focuses on *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020). There, the claims were directed to a communication system with a primary and secondary station for broadcasting inquiry messages and where each inquiry message included an additional data field for polling a secondary station. The Federal Circuit found that the claims were directed to an improvement in technology – *i.e.*, an improvement in communication systems that would ordinarily be subject to delays based on the conventional polling process (which allows secondary stations to wake up from parked mode). The claimed invention allowed message sending and polling to occur simultaneously, thereby reducing the delay necessary to activate a secondary station (and without the need for a permanently open communication channel).

---

5     (No. 20-221, D.I. 14 at 5; *see also* No. 20-222, D.I. 12 at 6).

6     *See Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 755 (Fed. Cir. 2019) (district court did not abuse its discretion in declining to consider expert declaration at motion to dismiss).

Focusing first on claim 1, unlike *Enfish*, *Uniloc* and that line of cases, claim 1 viewed as a whole is not directed to an improvement in the functioning of route guidance technology – rather, the focus of the claim is on using generic technology to implement the abstract idea of sending and receiving navigation data. I do not agree with Plaintiff that *Uniloc* is analogous. First, the specification at issue there explains the problem with prior communication systems – *i.e.*, that secondary stations would enter park mode – effectively a sleep mode – and it would take time to bring that secondary station back into service after sending a polling request. Moreover, in *Uniloc*, the specification also touted the claimed invention's improvement in the functioning of that technology. By not having to perform polling of secondary stations as a standalone process and instead including polling with the message itself, the communications system itself operated more quickly and efficiently than previously. That was an improvement in the functioning of the technology used in the communication systems.

The situation is different here. The specification offers no real indication as to the limitations of the prior art route guidance systems except for a line at the end of the specification generally touting the advantage of the claimed invention without reference to the prior art's disadvantages.[7] The benefits of the '876 Patent are purportedly ease of use and reducing equipment and running costs,[8] not an improvement in the functioning of the technology itself. Thus, at step 1, claim 1 seems focused on using computers to perform a human activity more efficiently.

I understand that Plaintiff attempts to focus the step 1 inquiry on the limitation that the communication channel is opened only to transmit information in short bursts and then closes until necessary again. And I am mindful that there are cases, like *Enfish*, where individual claim limitations should be incorporated into the articulation of what a claim is directed to, an exercise that happens at step 1. Yet, as was the case in *BASCOM*, here, I conclude the effect of the limitation called out by Plaintiff should be considered at step 2.[9]

---

[7] ('876 Patent at 4:53-60).

[8] (*Id.*).

[9] *See BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016) ("We recognize that this court sometimes incorporates claim limitations into its articulation of the idea to which a claim is directed. This case, unlike *Enfish*, presents a 'close call[] about how to characterize what the claims are directed to.' The *Enfish* claims,

I also agree with Defendants that the invention in claim 1 is more akin to the claims at issue in *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 770 (Fed. Cir. 2019). The patents in *ChargePoint* involved network-connected charging stations for electric vehicles, and the specification explained that the prior art suffered from a lack of communication network that allowed utility companies, businesses and drivers to interact efficiently as it related to electricity needs. The inventive communication network was touted as potentially providing the ability to manage electricity demands of vehicles and power grids by allowing interconnectivity. And the specification described the claimed invention as a networked system that allowed drivers to locate charging stations and pay for charging, and it also allowed utility companies to provide information relating to electricity demands. Against this backdrop, the Federal Circuit found the claims to be directed to the abstract idea of network communication for device interaction. In reaching that conclusion, the Federal Circuit rejected the contention that the claimed invention was an improvement in technology, particularly in light of the breadth of the claims and the fact that the focus of the claims was on facilitating business interactions.

Here, I am at a disadvantage because the short specification offers no insight as to the problem facing the inventors and how the claims solved that problem – in a particular technological way or otherwise. That being said, although the specification may shed light on the step 1 inquiry, the focus must ultimately be on the claim language itself. Claim 1 of the '876 Patent is drafted in largely functional terms, often using generic "means" terms, and it broadly claims the use of computer technology to communicate navigation data. The claim as a whole is not to an improvement in route guidance technology, but rather to a general way of providing navigation data to remote drivers using computers.

In sum, I conclude that claim 1 is not directed to an improvement in technology but to the abstract idea of sending and receiving navigation data. And claim 1 is representative. The remaining claims are substantially similar and linked to the same abstract idea. When viewing the claims as a whole and looking to their purported improvement over the prior art, the claims of the patent are directed to the abstract idea I specified.

---

understood in light of their specific limitations, were unambiguously directed to an improvement in computer capabilities. Here, in contrast, the claims and their specific limitations do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea. We therefore defer our consideration of the specific claim limitations' narrowing effect for step two." (citations omitted)).

Turning to step 2, Defendants argue that the claims use only generic computer and networking components performing conventional computer functions and that this is insufficient to confer an inventive concept. Defendants emphasize that the '876 Patent is silent as to the components used in the claimed invention, how there is an improvement in the functioning of technology and how the improvement is effectuated.

Defendants argue that the "short burst" idea merely uses a generic network as a tool and that the advantages highlighted in the specification are simply cost savings and insufficient to demonstrate the necessary inventive concept.

Plaintiff asserts that the '876 Patent claims recite unconventional features, and their ordered combination confers an inventive concept to the otherwise abstract idea of sending and receiving navigation data. In particular, Plaintiff emphasizes the selective opening and closing of the communication channel to send route guidance data to the desired vehicle in short bursts. According to Plaintiff, this unconventional manner of communicating data resulted in increased interactivity with the driver and increased scalability in that it allowed for supporting a large number of in-vehicle devices to receive route guidance. Plaintiff argues that the on-demand communication channel was unconventional as compared to prior systems, which required a constantly open channel of communication. In Plaintiff's view, the short-burst communication employed by the claims freed up bandwidth in a way that conventional systems did not, thereby allowing more drivers to be provided with route guidance data from a central navigation server and without delays that accompanied phone-based systems. In its complaints, Plaintiff includes allegations that plausibly suggest this short-burst/on-demand communication feature was unconventional and offered these types of advantages over prior route guidance systems.[10]

Here, unlike many of the cases cited by Defendants, the '876 Patent does not admit that the claim elements and their ordered combination were conventional, well known and understood in the art. And Plaintiff's complaints include plausible factual allegations that the claimed invention improves upon the prior conventional systems by using this selective on-demand communication channel to transmit route guidance data in short bursts. The complaints explain how this feature was unconventional and offer specific

---

10     (*See* No. 20-221, D.I. 1 ¶¶ 12, 13, 14, 17, 18, 19 & 22; *see also* No. 20-222, D.I. 1 ¶¶ 12, 13, 14, 17, 18, 19 & 22).

11

advantages that the resultant system had over the prior systems. Under *Berkheimer*, whether the claim elements and their ordered combination is simply well-known, routine and conventional is a question of fact and, in this case, because there are plausible factual allegations as to the unconventionality of the short-burst communication, there is a factual dispute that precludes dismissal. This is where this case departs from *ChargePoint* because there, the specification described the problem in the prior art as a lack of connectivity for business interactions and that the claimed solution facilitated that interaction by implementing a network. Here, the patent is silent as to the problems facing the inventors and the purportedly inventive solution, and Plaintiff includes allegations in its complaints that plausibly suggest the short-burst communication was an unconventional way of delivering route guidance data.

I do not agree that Plaintiff's pleading must point to portions of the specification that support its contention that certain limitations are not well understood, routine or conventional. At the motion to dismiss stage, *Aatrix* requires me to resolve plausibly alleged factual issues in favor of the patentee at step 2. This means that if Plaintiff includes in its complaint plausible factual allegations that support the conclusion that the claim elements or their ordered combination were not well-understood, routine or conventional and there is nothing in the record that I can properly consider on a motion to dismiss that contradicts those allegations, then those factual issues must be decided in favor of Plaintiff.[11]

Thus, at step 2, I cannot conclude that the claim elements or their ordered combination are well known, routine and conventional activities known in the art, thereby failing to confer an inventive concept. Given the constraints of *Berkheimer* and *Aatrix*, I cannot resolve this question today in light of Plaintiff's plausible factual allegations in the complaints that are uncontradicted by the '876 Patent or anything else I can properly consider at this stage. Defendants' motions are denied with leave to renew at summary

---

11     *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127-28 (Fed. Cir. 2018) ("Viewed in favor of Aatrix, as the district court must at the Rule 12(b)(6) stage, the complaint alleges that the claimed combination improves the functioning and operation of the computer itself. These allegations, if accepted as true, contradict the district court's conclusion that the claimed combination was conventional or routine. Therefore, it was an abuse of discretion for the district court to deny leave to amend. . . . Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact. And in this case, that question cannot be answered adversely to the patentee based on the sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice.").

judgment to the extent there are no factual issues precluding resolution of the § 101 issues at that time.

_____
The Honorable Maryellen Noreika
United States District Judge